## *In re* JACKSON.

*(Circuit Court, D. Kansas.* November 28, 1889.)

**FEDERAL COURTS—JURISDICTION—"NO MAN'S LAND."**

The Indian Territory is defined by Act Cong. June 30, 1834, (4 St. at Large, 729,) as all that part of the United States west of the Mississippi, and not in Missouri, Louisiana, and Arkansas, and all east of the river, and not within any state to which the Indian title has not yet been extinguished. The tract of land known as "No Man's Land" was not then a part of the United States, and many treaties and acts of congress passed afterwards, by implication at least, locate the western boundary of the Indian Territory at the 100th meridian, which is the eastern boundary of "No Man's Land." In others, this tract is clearly, or by implication, recognized as a part of the territory. Act Cong. 1889, (25 St. at Large, 788,) established a United States court with jurisdiction extending over the Indian Territory, bounded so as to include "No Man's Land." Section 17 attached to the eastern district of Texas all of the Indian Territory not otherwise assigned, which included this land, if it was a part of the territory. *Held,* that the jurisdiction of the United States court for the eastern district of Texas over this tract of land was sufficiently clear to grant a removal to the state of Texas of one indicted by that court for a crime committed in "No Man's Land," and arrested in another state.

Application for *Habeas Corpus.*

*J. W. Ady* and *P. L. Soper,* for the United States.

*Hallowell & Hume* and *E. Hagan,* for petitioner.

BREWER, C. J. In the case *Ex parte Jackson,* the facts are these: The petitioner was indicted by the federal court of the eastern district of Texas for the crime of murder, committed in the year 1888, in the district known as "No Man's Land." He was arrested in this state, and a removal is sought to the Texas district. To prevent that, this petition in *habeas corpus* has been filed; and the question presented is as to the jurisdiction of the Texas court over the territory and the offense, and the duty of this court on *habeas corpus.* If the jurisdiction of that court, both as to the territory and the offense, was clear, the duty of this court would be imperative to deny the petition, and see that the petitioner be removed to that district. On the other hand, if it were clear that that court did not have jurisdiction, either as to the territory or the offense, then it would in like manner be the imperative duty of this court to sustain the petition, and discharge the petitioner. But neither of those is this case. Again, if it was a case where the question was which of two courts had jurisdiction, then it would be the duty of this court to determine, if it were a matter of doubt, which most probably had jurisdiction, and send the petitioner there. But this case does not even present that question, for here, confessedly, no court has jurisdiction, unless it be the Texas court; and the question is, what is the duty of this court, under such circumstances as these? Conceding that the jurisdiction of the Texas court be doubtful, if it have no jurisdiction, then there is no jurisdiction to punish this offense. In a case like that, I conceive that if there be fair reason for believing that that court has jurisdiction, or that that court, being a court of equal authority with this, with the right to determine the extent of its own jurisdiction, would on inquiry hold in favor of that jurisdiction, then, as in no other way can inquiry be

made into this alleged offense, this court ought to remit the party to that court.

Has that court jurisdiction? The homicide took place in "No Man's Land," in 1888, as alleged. What is known as the "Indian country," or the "Indian Territory," was first defined and bounded by the act of June 30, 1834, (4 St. at Large, 729.) That definition is as follows:

"That all that part of the United States west of the Mississippi, and not within the states of Missouri and Louisiana, or the territory of Arkansas, and also that part of the United States east of the Mississippi river, and not within any state to which the Indian title has not been extinguished, for the purposes of this act, be taken and deemed to be the Indian country."

Now the expressions "Indian country" and "Indian Territory" are used interchangeably in the statutes. We speak of the Indian Territory; but, politically, that is a mistake. There is no organization. It is more properly a territory referring simply to geographical extension, and not to any political organization. At the time this act of 1834 was passed, "No Man's Land" was not a part of the United States. It did not then come within "Indian country," as defined; and, unquestionably, many treaties and acts of congress have been made and passed since in which the western boundary of this Indian country, or Indian Territory, is, by implication at least, located on the 100th meridian, which is the eastern boundary of "No Man's Land." And yet this original territorial boundary may, without any undue stretch of language, be regarded as a shifting boundary. It is not a boundary prescribed for the purpose of political organization, or for a deed or other conveyance. It is a boundary for the mere purpose of defining the territory over which certain laws of the United States will have operation. Being such a boundary, it would not be improper to consider that boundary shifting, whenever other territory was properly subjected to the operation of the same laws. It would be changed by the organization of any part of this territory into a political territory of the United States. It might be changed whenever the territorial boundaries of the United States were extended westward, by purchase or conquest, into country unoccupied, save by the Indians. It may be regarded as a boundary certain, but shifting; something on the principle controlling the boundary of a lot on a river or on a lake. That boundary is certain, though it may be shifting. By accretions, the water-line may be extended far into the river or the lake; but still it is the water-front. So here, considering the purpose for which the Indian country was bounded, one may fairly infer that that boundary shifted as the territorial extensions of the United States increased, or as territory was carved out of it for political organization. That such is the real force of that description is evident from the case of *Ex parte Crow Dog*, in 109 U. S. 556, (3 Sup. Ct. Rep. 396.) The syllabus, and the opinion bears this out, reads as follows:

"The definition of the term 'Indian country' contained in chapter 161, § 1, of the Act of 1834, (4 St. 729,) though not incorporated in the Revised Statutes, and though repealed simultaneously with other enactments, may be referred to in order to determine what is meant by the term when used in the

statutes; and it applies to all the country to which the Indian title has not been extinguished within the limits of the United States, whether within a reservation or not, and whether acquired before or since the passage of that act."

This territory was acquired since the passage of that act.

As I said, however, there are many treaties and statutes since that in which the implication is manifest that the 100th meridian was the western boundary, or was regarded as the western boundary, of the Indian Territory. That, of course, throws doubt upon the scope of that decision. On the other hand, we find some in which it is equally clear that this "No Man's Land" is recognized as a part of the Indian Territory, as in article 2 of the treaty with the Comanches and Kiowas, October 18, 1865, found in 14 Statutes at Large, 718. But, coming closer than that, in the act of 1883, in which there was an attempted partition of the jurisdiction over the Indian Territory between the district of Kansas, the northern district of Texas, and the eastern district of Arkansas, in describing that portion of the territory which was assigned to the district of Kansas, it is declared that "all that part of the Indian Territory lying north of the Canadian river and east of Texas and the one hundredth meridian" be annexed to and constitute a part of the United States judicial district of Kansas. "That part of the Indian Territory east of Texas and the one hundredth meridian" implying that there was some portion of the territory west of the one or the other of these two. And section 3 says:

"All that portion of the Indian Territory not annexed to the district of Kansas by this act, and not set apart and occupied by the Cherokee, Creek, Choctaw, Chickasaw, and Seminole Indian tribes, shall, from and after the passage of this act, be annexed to and constitute a part of the United States judicial district known as the 'Northern District of Texas.'"   22 St. 400.

Of course, this is mere implication, but it certainly is strong implication, that there was some territory lying west of the 100th meridian; and it could be only that which is known as "No Man's Land." That was in 1883.

Coming down to 1889, an act was passed to establish a United States court in the Indian Territory, which is found in 25 U. S. St. at Large, 783, in which the Indian Territory is bounded: "That a United States court is hereby established whose jurisdiction shall extend over the Indian Territory, bounded as follows:" (Then it bounds it so as to include "No Man's Land.") This is either a recognition by congress of that as the previous boundary of this Indian Territory, or is an assertion that henceforward such should be the boundary. The court created by this act was given jurisdiction of misdemeanors. The seventeenth section of that act attached to the eastern judicial district of Texas all that portion of the Indian Territory not otherwise assigned, and included "No Man's Land," if it were a part of the territory. Now, where a term is used and defined in the opening part of a statute, the use of that term thereafter in the statute is with the same meaning, and the same definition. The "Indian Territory" is bounded in the first section so as to in-

clude "No Man's Land." That term used thereafter, without any definition of boundary, means the same territory. Hence I have no question but that by said section 17 the jurisdiction over this "No Man's Land" was assigned to the eastern district of Texas. That, of course, was since the offense was charged to have been committed.

My conclusions, then, are these: That to-day, and since March, 1889, the court of the eastern district of Texas has jurisdiction over "No Man's Land." Probably, also, the court of the northern district of Texas had like jurisdiction prior thereto, and since 1883; and, there being a federal court, with jurisdiction territorially, with ministerial officers, a clerk, and a marshal, there is no trouble in finding all the machinery for purposes of trial. Under those circumstances, it seems to me that it is the duty of this court to deny this petition.